UNITED STATES, Appellee

v.

Steven D. JEFFERS, Specialist
U.S. Army, Appellant

No. 00-0286

Crim. App. No. 9701201

United States Court of Appeals for the Armed Forces

Argued January 22, 2002

Decided June 28, 2002

CRAWFORD, C.J., delivered the opinion of the Court, in which GIERKE, EFFRON, and BAKER, JJ., joined. SULLIVAN, S.J., filed an opinion concurring in the result.

Counsel

For Appellant: Captain Terri J. Erisman (argued); Colonel Adele H. Odegard, Lieutenant Colonel E. Allen Chandler, Jr., and Major Imogene M. Jamison (on brief); William E. Cassara and Captain Steven P. Haight.

For Appellee: Captain Steven D. Bryant (argued); Colonel Steven T. Salata, Lieutenant Colonel Denise R. Lind, Major Paul T. Cygnarowicz, and Captain Tami L. Dillahunt (on brief); Captain Mary E. Braisted.

Military Judges: James J. Smith and Patrick J. Parrish

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Chief Judge CRAWFORD delivered the opinion of the Court.

A court-martial panel of officers and enlisted members convicted appellant, on mixed pleas, of failing to obey a lawful order (two specifications), rape, forcible sodomy, and adultery (four specifications), in violations of Articles 92, 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 892, 920, 925, and 934, respectively.  The adjudged and approved sentence provides for a bad-conduct discharge, confinement for three years, total forfeiture of pay and allowances, and reduction to E-1.  The Court of Criminal Appeals affirmed the findings and sentence without opinion.  This Court granted review of the following issues:

> I.  WHETHER THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT THE FINDING OF GUILTY TO FAILURE TO OBEY A LAWFUL ORDER (SPECIFICATION 1 OF THE ADDITIONAL CHARGE).
>
> II.  WHETHER APPELLANT'S CONSTITUTIONAL AND STATUTORY RIGHT TO BE TRIED BY A COURT-MARTIAL PANEL AND HAVE THAT PANEL DETERMINE WHETHER THE GOVERNMENT HAS PROVEN EVERY ESSENTIAL ELEMENT OF THE CHARGED OFFENSE BEYOND A REASONABLE DOUBT WAS VIOLATED BECAUSE THE MILITARY JUDGE RULED THAT THE ORDER GIVEN TO APPELLANT WAS LAWFUL WITHOUT SUBMITTING THE ISSUE TO THE PANEL FOR A VERDICT, AND BECAUSE THE MILITARY JUDGE INSTRUCTED THE PANEL THAT THE ORDER WAS LAWFUL AS A MATTER OF LAW.

For the reasons set out below, we affirm.

FACTS

Appellant was a married soldier stationed in Korea.  He and Private (PV1) P were having an extramarital relationship, which resulted in appellant being charged with adultery, to which he pleaded guilty.  Upon discovering this relationship, the Company Commander of both soldiers, Captain (CPT) DeHaan, gave appellant an order that "you will not have social contact with PV1 [P]."  CPT DeHaan gave a similar no-contact order to PV1 P.  The only contact the two could have was to be contact that was "official in nature."

Appellant was charged with violating his commander's no-contact order on two occasions.  On May 7, 1997, PV1 P went to appellant's room feeling "confused, upset, hurt."  She stayed in appellant's room from ten to fifteen minutes.  PV1 P testified that in her judgment, this visit was not official business.  She stated that the nature of her visit was both personal and official, but it was more personal, and she had no doubt that she was violating CPT DeHaan's order by being in appellant's room.  Appellant and PV1 P talked about appellant's pending court-martial and "how I [P] needed to save both of our butts."  Appellant never told her to leave the room or otherwise attempted to have her removed.

Similarly, appellant testified that he was in bed watching television when PV1 P entered the room.  He informed her that

she should not be there because the commander's no-contact order was still in effect. Appellant confirmed PV1 P's earlier testimony that she was "upset" at the time she entered his room. During the fifteen to twenty minutes that PV1 P remained in the room, sitting on appellant's bed for part of the time and threatening to hurt herself on two occasions, appellant did not call the military police, the Charge of Quarters (CQ), or anyone in his chain-of-command, even though he took her suicide threat seriously. While he understood his commander's no-contact order, he did not think that his unsuccessful attempts to calm PV1 P violated that order. The conversation between appellant and PV1 P was terminated when Staff Sergeant Kimble, the CQ, discovered PV1 P in appellant's room and required her to leave.

Three days later, on May 10, 1997, appellant violated CPT DeHaan's order by having social contact with PV1 P at the Navy Club, located on Yongsan Garrison, Republic of Korea. Appellant pleaded guilty to violating his commander's order on this occasion. During the providence inquiry into this guilty plea, appellant admitted that the commander's order was lawful, after the military judge explained the definition of a lawful order.

Prior to instructing the members on findings, the military judge informed defense counsel that he intended to give the court members the elements of the offense of disobeying an order and inform them, as a matter of law, that the order, if there

4

was in fact such an order, was lawful.  Defense counsel had no objection to this proposed instruction.  The military judge then instructed the members as he said he would, informing them that as a matter of law, the order in this case, if in fact there was an order, was lawful.  Trial defense counsel again had no objection to this instruction.  At trial defense counsel's request, the military judge properly instructed the members that duress was a defense to appellant's failure to obey his commander's order on May 7.

### DISCUSSION

Appellant now asserts that CPT DeHaan's order to him was (1) overbroad, in light of United States v. Wysong, 9 USCMA 249, 26 CMR 29 (1958); and (2) illegal, because it unlawfully inhibited his ability to prepare a defense.  See United States v. Aycock, 15 USCMA 158, 35 CMR 130 (1964).  Additionally, appellant argues that there is insufficient evidence to sustain the finding of guilty to the specification of violating CPT DeHaan's order on May 7, because appellant felt compelled to disobey his commander's directive in order to prevent PV1 P's suicide.  Finally, with regard to Issue II, appellant argues that United States v. New, 55 MJ 95, cert. denied, 122 S. Ct. 356 (2001), is not dispositive because that case involved a question of law.  Here, according to appellant, there was a factual issue raised as to whether the order issued by the

company commander was "reasonably necessary," and that factual decision belonged to the members.

Appellant does not contest CPT DeHaan's authority to issue a no-contact order, nor does he claim that such an order, on its face, has no valid military purpose. See United States v. Padgett, 48 MJ 273 (1998); United States v. Milldebrandt, 8 USCMA 635, 25 CMR 139 (1958). However, he argues that CPT DeHaan's order was neither reasonable nor necessary in this instance. While conceding that a "no social" contact order given to two members of the same company who are engaged in an adulterous relationship certainly could be required to maintain good order and discipline, as well as the morale, of that unit, appellant contends that without some showing that CPT DeHaan's order was reasonably necessary to maintain good order, discipline, or morale, it served no valid military purpose.

As we recently observed in Padgett, supra at 277, "[s]tarting with United States v. Womack, 29 MJ 88 (1989), this Court took a somewhat different approach to issues involving the breadth of an order, examining the specific conduct at issue rather than the theoretical limits of the order, as it did in Wysong and [United States v.] Wilson, [12 USCMA 165, 30 CMR 165 (1961)]." Compare, e.g., Wilson, supra (order "not to indulge in alcoholic beverages" held to be overbroad), with United States v. Blye, 37 MJ 92 (CMA 1993)(order "not to drink any

alcoholic beverages" held valid under circumstances of the case).

Unlike the order in Wysong, supra, where the breadth of the order prevented all speech, except in the line of duty, CPT DeHaan's order was definite, specific, and importantly, uncontested by defense counsel at trial.[1]  Furthermore, there was absolutely no restriction on appellant's ability to communicate with PV1 P, the company clerk, on official business.

Similarly, the order to have no social contact with PV1 P did not inhibit appellant's ability to prepare his defense.  See United States v. Nieves, 44 MJ 96 (1996).  In Aycock, the case on which appellant relies, the majority of this Court condemned an order that denied Aycock access to the witnesses against him prior to commencement of his court-martial.  15 USCMA at 162, 35 CMR at 134.  Nothing in CPT DeHaan's order could have been interpreted as restricting appellant's access to PV1 P, a potential witness against him, so long as the meeting with PV1 P was official business.  There are no facts developed at trial, either through motions, objections or testimony, that showed CPT DeHaan's order interfered with an attorney-client relationship, or impaired defense counsel's trial preparation.

---

[1] During CPT DeHaan's testimony concerning the purpose and extent of his no-contact order, defense counsel interrupted and announced to the military judge that "the defense will stipulate to the lawfulness of the order."  The military judge responded by informing defense counsel that he would consider a written stipulation only.  No such written stipulation was introduced into evidence.

7

United States v. Jeffers, No. 00-0286/AR

Finally, testing for legal sufficiency under Jackson v. Virginia, 443 U.S. 307, 319 (1979), we conclude that a "rational trier of fact could have found the essential elements of [disobeying CPT DeHaan's order] beyond a reasonable doubt." The length of time PV1 P remained in appellant's room, coupled with the fact that the contact between appellant and PV1 P ended only after a noncommissioned officer discovered PV1 P in appellant's room and removed her, are consistent with the specification's allegation that appellant's contact with PV1 P on May 7 was social, in violation of the commander's order.

"Questions of the applicability of a rule of law to an undisputed set of facts are normally questions of law. Similarly, the legality of an act is normally a question of law." RCM 801(e)(5) Discussion, Manual for Courts-Martial, United States (2000 ed.),[2] cited in New, 55 MJ at 101. Appellant raised no legal or factual challenge to CPT DeHaan's order at trial. Nonetheless, he now belatedly insists that this is one of those rare instances where the legality of an act is not a question of law but is one of fact. We disagree and hold that the military judge did not err. "'[L]awfulness' is a question of law." New, 55 MJ at 105.

The decision of the United States Army Court of Criminal Appeals is affirmed.

---

[2] This Manual provision is identical to the one in effect at the time of appellant's court-martial.

8

United States v. Jeffers, 00-0286/AR

SULLIVAN, Senior Judge (concurring in the result):

In my view, it is Congress who "make[s] Rules for the Government and Regulation of the land and naval Forces," not the Manual drafters of the Discussion section of RCM 801(e)(5). U.S. Const., art. I, § 8, cl.14. The majority continues to follow the lead of the Manual drafters in holding that the lawfulness of a disobeyed order is not an element of a criminal offense but a question of law to be decided by the military judge alone. I again must disagree and would hold that it is an element of the offense of disobedience of lawful orders under Article 92, UMCJ, which should have been decided by the members in this case. See United States v. New, 55 MJ 95, 114-28 (2001)(Sullivan, J., concurring in the result).

Congress has repeatedly chosen to make the lawfulness of a certain act an element of a military criminal offense to be decided by the military jury or by the military judge if the military accused so requests. Lawfulness in these circumstances is usually a mixed question of fact and law. See generally United States v. Gaudin, 515 U.S. 506, 512-15 (1995). Examples are:

| | | |
|---|---|---|
| Article 84 | UCMJ | unlawful enlistment, appointment, or separation |
| Article 90(2) | UCMJ | lawful command |
| Article 91(2) | UCMJ | lawful order |

Article 92(1)    UCMJ    lawful general order or regulation

     92(2)    UCMJ    lawful order

Article 94(a)(1) UCMJ    lawful military authority

     94(a)(2) UCMJ    lawful civil authority

Article 97          UCMJ    unlawful detention

Article 119         UCMJ    unlawfully kills

Article 128         UCMJ    unlawful force

Article 130         UCMJ    unlawful entry

Article 131(1)    UCMJ    lawful oath


The majority's broad pronouncement that "'lawfulness' is a question of law," _ MJ at (8), suggests that the element of lawfulness, common to all these offenses, should also be removed from the military jury.  I disagree.

Nevertheless, I would affirm appellant's conviction.  There was overwhelming evidence of the lawfulness of the order in this case.  Moreover, appellant pleaded guilty to a second violation of this same order and admitted that the order was lawful. (R.79-80)  Finally, there was no dispute as to the lawfulness of this order at trial.  In fact, appellant offered to stipulate that the order was lawful. (R.197)  Clearly, this was harmless error under Neder v. United States, 527 U.S. 1 (1999);  see generally United States v. Phanphil, No. 01-0620, __ MJ __ (2002).