UNITED STATES, Appellee

v.

Adrian TORRES, Airman First Class
U.S. Air Force, Appellant

No. 14-0222

Crim. App. No. 37623

United States Court of Appeals for the Armed Forces

Argued December 10, 2014

Decided May 12, 2015

OHLSON, J., delivered the opinion of the Court, in which BAKER, C.J., and RYAN, J., joined. STUCKY, J., filed a separate dissenting opinion, in which ERDMANN, J., joined.

Counsel

For Appellant: Captain Christopher D. James (argued).

For Appellee: Captain Thomas J. Alford (argued); Colonel Don Christensen and Gerald R. Bruce, Esq. (on brief).

Military Judge: David S. Castro

**This opinion is subject to revision before final publication.**

United States v. Torres, No. 14-0222/AF

Judge OHLSON delivered the opinion of the Court.

At a general court-martial composed of officer members, Appellant was convicted contrary to his plea of one specification of aggravated assault under Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2012).[1] Specifically, Appellant was found guilty of "commit[ting] an assault . . . [on his wife] by choking her throat with his hands with a force likely to produce death or grievous bodily harm."

At trial, the defense sought to show that Appellant assaulted his wife while in an altered state of consciousness following an epileptic seizure, and that Appellant's conduct was therefore involuntary. The defense asked the military judge to instruct the panel accordingly. However, the military judge declined to do so, and instead provided the panel an instruction consistent with the affirmative defense of "lack of mental responsibility" due to a severe mental disease or defect under Rule for Courts-Martial (R.C.M.) 916(k)(1).

We find that the military judge erred in the manner in which he handled the instructions in this case. However, based on the weight of the evidence, we conclude that the military judge's error was harmless beyond a reasonable doubt. We

---

[1] Appellant also was convicted contrary to his pleas of three simple assault specifications for assaulting his wife on divers occasions, but was acquitted of a fourth simple assault specification. These specifications are not relevant to the granted issue.

2

therefore affirm the decision of the United States Air Force Court of Criminal Appeals.

## FACTS

The evidence adduced at trial showed that on May 12, 2008, Appellant and his wife hosted a party at their on-base residence. During the course of the party, Appellant consumed approximately eight to ten shots of alcohol. At approximately 2:00 a.m. on May 13, 2008, Appellant and his wife went to bed while some of their guests went to sleep elsewhere in the home. Upon rising several hours later, Appellant's wife discovered Appellant partially clothed and curled up on the floor, apparently asleep. She shook Appellant and informed him that she was driving some of their guests home. Appellant did not respond.

Appellant's wife returned to their home a short time later. She again shook Appellant trying to rouse him, but again he did not respond. When she tried to lift Appellant to an upright position, Appellant grabbed his wife, threw her on the bed, squeezed her head, punched her, choked her, and hit her head against the bed's headboard.

Appellant's wife finally managed to escape by hitting Appellant in the head with a bedside telephone base and running out of the bedroom. Appellant walked into the living room, and asked a remaining guest what happened to his wife. When the

guest exclaimed that Appellant had just severely beaten his wife, Appellant went back into the bedroom and lay down. When military law enforcement officials arrived shortly thereafter, Appellant did not respond until he was shaken vigorously, whereupon he once again inquired about the location of his wife.

At trial, Appellant sought to show that he had an epileptic seizure on the morning of May 13, 2008, and that he thus was experiencing an altered state of consciousness when he assaulted his wife. Appellant further asserted that this altered state of consciousness rendered his actions involuntary, and argued that the Government had therefore failed to prove that his conduct "was done with unlawful force or violence" as required for aggravated assault. Manual for Courts-Martial, United States pt. IV, para. 54.b.(4)(a)(iii) (2012 ed.) (MCM) (emphasis added).[2]

---

[2] Aggravated assault under Article 128(b)(4), UCMJ, contains the following elements:

(i) That the accused attempted to do, offered to do, or did bodily harm to a certain person;

(ii) That the accused did so with a certain weapon, means, or force;

(iii) That the attempt, offer, or bodily harm was done with unlawful force or violence; and

(iv) That the weapon, means, or force was used in a manner likely to produce death or grievous bodily harm.

MCM pt. IV, para. 54.b.(4)(a).

Consistent with this approach, trial defense counsel asked the military judge to give the panel the following instruction:

> An accused may not be held criminally liable for his actions unless they are voluntary. . . .
>
>     . . . .
>
>     . . .[Therefore,] [u]nless, in light of all the evidence you are satisfied beyond a reasonable doubt that the accused, at the time of the alleged offense acted voluntarily, you must find the accused not guilty of that offense.

The military judge, however, declined to give that instruction. Instead he instructed the panel: "The evidence in this case raises the issue of whether the accused lacked criminal responsibility for the offenses . . . as a result of a severe mental disease or defect." Consistent with this affirmative defense, the military judge further instructed the panel that if it concluded that the Government had proved all of the elements of the offense beyond a reasonable doubt, the burden then shifted to the defense to show by clear and convincing evidence that the accused suffered from a severe mental disease or defect, making him unable to appreciate the nature and quality or wrongfulness of his conduct. See R.C.M. 916(k)(1).

ANALYSIS

The granted issue in the instant case is as follows: "Whether the military judge erred by denying the defense requested instruction." In deciding this issue, this Court must

first consider the appropriate manner for a military judge to instruct a panel when the evidence reasonably raises the issue of whether an accused cannot be held criminally liable because his conduct was involuntary due to automatism.[3]

In analyzing the matter before us, it is helpful to start from the principle articulated by the Supreme Court in Morissette v. United States, 342 U.S. 246 (1952). In that case, the Supreme Court memorably stated that in order for an accused to be held criminally responsible, the government must prove the "concurrence of an evil-meaning mind with an evil-doing hand." Id. at 251. Stated more prosaically, "[i]n the criminal law, both a culpable mens rea and a criminal actus reus are generally required for an offense to occur." United States v. Apfelbaum, 445 U.S. 115, 131 (1980). Accordingly, an accused cannot be held criminally liable in a case where the actus reus is absent because the accused did not act voluntarily, or where mens rea is absent because the accused did not possess the necessary state of mind when he committed the involuntary act.

---

[3] "Automatism" is defined as "[a]ction or conduct occurring without will, purpose, or reasoned intention," "behavior carried out in a state of unconsciousness or mental dissociation without full awareness," and "[t]he physical and mental state of a person who, though capable of action, is not conscious of his or her actions." Black's Law Dictionary 160 (10th ed. 2014). "Automatism" is sometimes referred to as an "'unconsciousness defense.'" United States v. Axelson, 65 M.J. 501, 515 (A. Ct. Crim. App. 2007) (quoting Eunice A. Eichelberger, Annotation, Automatism or Unconsciousness as Defense to Criminal Charge, 27 A.L.R.4th 1067, § 2 (1984)).

United States v. Torres, No. 14-0222/AF

Neither the UCMJ nor this Court's precedent has provided definitive guidance regarding whether automatism should be viewed as negating the mens rea or the actus reus of a charged offense.  This Court's predecessor indicated in dicta that the mens rea approach may be the most appropriate.  United States v. Olvera, 4 C.M.A. 134, 140-41, 15 C.M.R. 134, 140-41 (1954).  Similarly, in a per curiam opinion in United States v. Rooks, 29 M.J. 291, 292 (C.M.A. 1989), the Court noted that "seizures attendant to epilepsy render an accused unable to form the mens rea required for conviction."

Further, in United States v. Berri, 33 M.J. 337, 344 (C.M.A. 1991), the Court of Military Appeals stated that "evidence that an accused was unconscious or did not realize what he was doing, etc., might suggest that he did not or could not intend the specific consequences of his actions."  However, the Court in Berri also noted that the common law and the Model Penal Code treat automatism as negating the actus reus rather than the mens rea of the accused.  Id. at 341 n.9.  Moreover, in Berri -- the most recent case in which this Court addressed automatism -- we stated:  "What the status of unconsciousness might be under the Uniform Code of Military Justice, we do not decide here."  Id.

Thus, as noted above, at the time of trial in the instant case, the state of the law was not particularly clear in regard

7

to whether automatism should be viewed as potentially negating an accused's mens rea, or potentially negating the actus reus, or both.  What was clear, however, was that neither epilepsy nor automatism constituted a mental disease or defect and this Court has never held that the affirmative defense of lack of mental responsibility applies in these cases.  Indeed, we find it was error for the military judge in the instant case to instruct the panel in that manner.

In reaching this conclusion, we first note that we review de novo the instructions given by a military judge.  United States v. McDonald, 57 M.J. 18, 20 (C.A.A.F. 2002).  We next underscore the fact that by instructing the panel pursuant to the provisions of R.C.M. 916(k)(1), the military judge shifted the burden of proof to the defense to show that the accused suffered from a severe mental disease or defect, which made him unable to appreciate the nature and quality or wrongfulness of his conduct.  This the military judge could not do.  At trial the burden always was required to rest with the Government to prove beyond a reasonable doubt that Appellant had committed each element of the offense, and one of those elements pertained to the issue of whether Appellant's actions were voluntary, and hence, "unlawful."  Article 128(a), UCMJ.  Thus, we find that the instructions given by the military judge constituted error.  See Government of the Virgin Islands v. Smith, 278 F.2d 169, 173

(3d Cir. 1960) (finding error where trial judge placed burden on defendant to prove unconsciousness from an epileptic seizure).

Having found instructional error in the instant case, we will assume -- without deciding -- that the military judge's failure to provide the defense-requested instruction similarly constituted error. We now turn to whether Appellant was prejudiced by the instructional error. In conducting this harmlessness analysis, we examine whether it is "'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" McDonald, 57 M.J. at 20 (quoting Neder v. United States, 527 U.S. 1, 18 (1999)). We conclude that this standard has been met in the instant case for the reasons cited below.

First, the Government's expert witness, a neurologist, testified that: (a) postictal[4] violence is rare among people who have epilepsy; (b) those individuals who do engage in postictal violence do it "every time," but Appellant did not have a history of postictal violence; (c) in those rare instances when postictal violence does occur, it typically happens in the "immediate postictal state" rather than twenty to thirty minutes from the beginning of the postictal state as posited in the instant case; and (d) Appellant's version of events where he

---

[4] The defense expert had previously testified that the term "ictal" refers to a seizure and "postictal" refers to the period after a seizure.

engaged in postictal violence then got up, got dressed, talked to a guest in his home, and then regressed into a "somnolent" state again didn't "add up" in the expert's mind.

Second, the second sanity board conducted in this case found that Appellant was not "experiencing a postictal state during the alleged assault" but rather was suffering from an "alcohol-induced mood disorder and partner relationship problems."

Third, the military judge granted the trial defense counsel broad latitude to introduce evidence and to argue before the panel that:  (a) Appellant's choking of his wife was the direct result of his altered state of consciousness brought on by an epileptic seizure; (b) this altered state of consciousness caused Appellant's conduct to be involuntary; and (c) because Appellant's conduct was involuntary, Appellant could not be held criminally responsible for the assault.

Fourth, and arguably most damaging to Appellant, when the defense's own expert witness testified on cross-examination, he agreed that it was "highly improbable" that Appellant assaulted his wife due to the effects of being in a postictal state. (Emphasis added.)  Thus, we hold that the military judge's instructional error in this case was harmless beyond a reasonable doubt.

United States v. Torres, No. 14-0222/AF

As noted above, in the military justice system, neither epilepsy nor automatism has been held to be a mental disease or defect. Therefore, the affirmative defense of lack of mental responsibility under R.C.M. 916(k)(1) is not applicable in those instances. However, the state of the law regarding the appropriate way to instruct a panel in an automatism case has been somewhat unsettled. We now seek to remedy that situation by holding as follows: In cases where the issue of automatism has been reasonably raised by the evidence, a military judge should instruct the panel that automatism may serve to negate the actus reus of a criminal offense.

In reaching this conclusion, we note that this issue is not squarely addressed under the MCM. Under such circumstances, this Court has historically looked to external guidance, including the Model Penal Code, as a "'source of decisional guidance in military justice.'" United States v. Hayes, 70 M.J. 454, 463 n.5 (C.A.A.F. 2012) (quoting United States v. Curtis, 32 M.J. 252, 267 (C.M.A. 1991)).

Although the Model Penal Code does not specifically address automatism, many of its tenets are useful in addressing criminality in the context of involuntary behavior. For example, the Model Penal Code predicates criminal liability on the essential requirement of a voluntary act. Model Penal Code

11

§ 2.01(1) (1962). ("A person is not guilty of an offense unless his liability is based on conduct that includes a voluntary act . . . ."). And we especially note that the Model Penal Code excludes from "voluntary acts" reflexes, convulsions, and movements occurring during unconsciousness. Id. at § 2.01(2)(a), (b).

The approach taken by the Model Penal Code is consistent with the common law, which required criminal acts to be voluntary. See Berri, 33 M.J. at 341 n.9. Moreover, it is consistent with this Court's view that "[n]o societal interest is furthered by criminalizing acts committed in the throes of a seizure, where there is no control over one's reflexes." Rooks, 29 M.J. at 292. Therefore, we now adopt the actus reus approach in automatism cases, and hold that in those cases where the evidence reasonably raises the issue of automatism, military judges must instruct panels accordingly.

## CONCLUSION

The military judge committed instructional error in this case, but the error was harmless beyond a reasonable doubt. We therefore affirm the decision of the United States Air Force Court of Criminal Appeals.

12

United States v. Torres, No. 14-0222/AF

STUCKY, Judge, with whom ERDMANN, Judge, joins (dissenting):

I concur with the majority's holding that the military judge erred when he refused to give the defense-requested voluntariness instruction and instead gave the standard mental responsibility instruction. I disagree with the holding that such error was harmless beyond a reasonable doubt.

"'The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence.'" United States v. Davis, 73 M.J. 268, 273 (C.A.A.F. 2014) (quoting United States v. Dearing, 63 M.J. 478, 482 (C.A.A.F. 2006)). In other words, "could a rational panel have found Appellant not guilty if they had been instructed properly?" Id. Here, the answer is yes.

The evidence presented at trial included facts inconsistent with a finding that Appellant acted voluntarily. At trial, Appellant's wife endorsed her testimony from the Article 32, UCMJ, 10 U.S.C. § 832 (2012), investigation that she had never seen Appellant act like that before and "'[i]t was like -- it was a different person, not my husband.'" After assaulting her, Appellant emerged from the bedroom and asked what happened to his wife. United States v. Torres, No. 37623, 2013 CCA LEXIS 853, at *4, 2013 WL 5878809, at *1 (A.F. Ct. Crim. App. Oct. 3,

2013).  A guest told him that he had beaten her up.  A few minutes later Appellant's flight chief found him lying face down on the bed, where he remained unresponsive until the police arrived.  The defense's expert neurologist testified that, while postictal violence is rare, Appellant suffered a history of epileptic seizures and it was possible that Appellant's actions on this occasion were the product of a postictal state.  These facts raise the possibility of a reasonable doubt.

Since voluntariness is an implicit element of the offense, the Government had the burden to prove beyond a reasonable doubt that Appellant acted voluntarily.  See United States v. Berri, 33 M.J. 337, 341 n.9 (C.M.A. 1991) (noting that common law treats voluntariness as an implicit element of an offense).  But under the mental disease or defect instruction, the defense then had the burden to prove with "clear and convincing evidence" that he was in a postictal state.  2013 CCA LEXIS 853, at *10, 2013 WL 5878809, at *3.  This instruction shifted the burden to the defense, when it should have remained with the Government.  It also deflected the panel members' focus from the defense's argument that Appellant had been in a postictal state, to a straw man which the defense did not put forth, namely, whether Appellant suffered a mental disease or defect.

The military judge's failure to give the voluntariness instruction "eviscerated" Appellant's theory of the case and

2

thereby deprived him of a defense.  See Dearing, 63 M.J. at 485.

Without a correct instruction, "the members did not have

guideposts for an informed deliberation."  Id. (internal

quotation marks omitted).  The omission of the instruction meant

that the panel members were unable to consider the defense of

involuntariness in their deliberations.  In a close case such as

this, this error cannot be harmless beyond a reasonable doubt.

 I respectfully dissent.