*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

**UNITED STATES**
Appellee

**v.**

**Leo J. NAVARRO AGUIRRE, Airman First Class**
United States Air Force, Appellant

**No. 24-0146**
Crim. App. No. 40352

Argued February 26, 2025—Decided July 24, 2025

Military Judge: Elijah F. Brown

For Appellant: *Major Frederick J. Johnson* (argued); *Lieutenant Colonel Allen S. Abrams* and *Major Spencer R. Nelson.*

For Appellee: *Major Vanessa Bairos* (argued); *Colonel Matthew D. Talcott, Lieutenant Colonel Jenny A. Liabenow,* and *Mary Ellen Payne,* Esq. (on brief).

Chief Judge OHLSON delivered the opinion of the Court, in which Judge SPARKS, Judge MAGGS, and Judge HARDY joined. Judge JOHNSON filed a separate opinion, concurring in part and dissenting in part.

———————————

Chief Judge OHLSON delivered the opinion of the Court.

Appellant received from his medical provider a valid prescription for the sleep medication commonly known as Ambien. At approximately 6:00 p.m. the next day, he was seen driving erratically near his apartment complex. During an encounter with the police, Appellant acknowledged that he had recently taken Ambien, and he also admitted to "huffing" an aerosol spray at some unspecified time. He later was charged with, among other offenses, wrongful use of the controlled substance zolpidem (Ambien's chemical name), as well as reckless driving after using both zolpidem and aerosol inhalants. Appellant subsequently sought to plead guilty to the reckless driving specification. During the providence inquiry, Appellant stated that after he took his prescribed dose of Ambien, he fell asleep in his bed and the next thing he remembered was waking up behind the wheel of his car. The military judge accepted Appellant's plea.[1] Separately, and contrary to his pleas, a panel of officer and enlisted members found Appellant guilty of, among other offenses, wrongful use of zolpidem (hereinafter referred to as Ambien).

We granted review of the following issues:

> I. Whether Appellant's conviction for wrongful Ambien use is legally sufficient when: (1) he had a valid prescription for Ambien, and (2) the basis for his conviction was a medically-known side effect.

> II. Whether Appellant's guilty plea for reckless driving was provident when he took his prescribed dose of Ambien, fell asleep in his bed, and "the next thing [he] remembered is being behind the wheel of [his] car."

*United States v. Navarro Aguirre*, 85 M.J. 200 (C.A.A.F. 2024) (order granting review) (alterations in original).

---

[1] Appellant's plea of guilty to the reckless driving specification excepted the language concerning aerosol inhalants.

For the reasons set forth below, we conclude that Appellant's conviction for wrongful use of Ambien was not legally sufficient, but his guilty plea to reckless driving was provident.

## I. Background

Appellant was stationed at Joint Base Lewis-McChord, Washington. On September 30, 2021, he received a prescription for Ambien from his medical provider. The next day (a Friday), at approximately 6:00 p.m., a witness observed Appellant driving erratically. When Appellant's vehicle stopped for an extended period in a turn lane, the witness got out of his car to check on him. The witness saw Appellant dressed in his military uniform (although without the blouse), rocking back and forth with a can in his lap and what appeared to be a smile on his face. Appellant eventually turned into his apartment complex and bumped into a lamppost, which caused him to stop for several minutes before he drove off.

Local police officers soon responded to a report of a suspected case of "driving under the influence." When they discovered Appellant partially parked in a parking stall, they asked him if he had been drinking or using drugs. Appellant responded that he had taken Ambien. One officer, who had seen aerosol cans in the back seat of Appellant's car, asked him their purpose. Appellant admitted to "huffing" them but did not say when he had done so.

### A. Appellant's Guilty Plea

At his general court-martial, Appellant sought to plead guilty to reckless driving after taking Ambien. During the providence inquiry conducted in accordance with *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247 (1969), Appellant told the military judge that he had been prescribed Ambien the day before the incident to help him sleep. He further explained that on the day of the incident, he left work and arrived at his apartment around 2:30 p.m. He then took the "prescribed dose of one pill" of Ambien because he "hadn't slept in almost two days." Appellant stated that he then fell asleep in his bed and the next thing

he remembered was being in the driver's seat of his car, parked in the wrong parking spot, with his foot on the gas pedal and "revving the engine." He said that a police car was behind him and that when he spoke to the officers, he told them that he was not drunk but that he had taken Ambien.

In the course of the *Care* inquiry, Appellant told the military judge that he did not remember driving his car but that he had reviewed the statements of witnesses and the police. Having done so, he acknowledged that his car had been seen "recklessly weaving and blocking traffic" and veering on and off roads, and "that the swerving is what eventually led [him] to swerve onto the sidewalk and hit [a] lamppost." Based on his review of this evidence, Appellant admitted that he had operated his car in a reckless manner. During follow up questions from the military judge, Appellant also acknowledged that he had taken Ambien "after arriving home from work," and he agreed with the military judge that the Ambien caused him to not remember being in control of the vehicle.

The military judge questioned Appellant about his mental state during the time of the offense. Appellant said that he "was not in complete control of [his] faculties" and acknowledged that he was driving recklessly because his actions of swerving on the road, blocking traffic, riding on top of a sidewalk, and hitting a lamppost were unsafe for himself and others. He also conceded that the Ambien could have affected his ability to safely control the vehicle. He told the military judge that when his "memory came to" he recalled feeling "dazed, groggy, slow, and having a hard time understanding the police officers." Appellant specifically denied having a justification or excuse for driving his vehicle in the manner alleged, and he told the military judge that he was pleading guilty voluntarily and of his own free will.

The military judge accepted Appellant's guilty plea to reckless driving in violation of Article 113, Uniform Code

of Military Justice (UCMJ), 10 U.S.C. § 913 (2018).[2] However, the military judge told Appellant that he could seek to withdraw his plea of guilty at any time before his sentence was announced.

### B. The Contested Offenses

With regard to the contested offenses (as well as to the contested language of "and aerosol inhalants" in the reckless driving specification), Appellant elected trial by members with enlisted representation. In seeking to prove Appellant's wrongful use of Ambien, the prosecution offered photos of the interior of Appellant's car. These photos were taken from outside of the car more than two months after the charged incident. One of the photos of the front passenger seat showed what appeared to be pharmacy paperwork that had accompanied Appellant's Ambien prescription. Another photo showed a small brown paper bag in the backseat.

The prosecution also offered the testimony of an expert witness in the field of forensic toxicology. He testified that a prescription for Ambien would have instructed the patient to take the medication "[j]ust before one desires to go to sleep." He also testified, among other things, to the following facts: (a) Ambien is a medication that assists a person in getting a full night's sleep, rather than sleep for a short period of time; (b) the purpose of Ambien is to put the user to sleep and to help the user stay asleep; (c) Ambien can be misused and abused if a user takes a higher dosage than prescribed or if the medication is taken with other intoxicants; and (d) Ambien is a senses suppressant which can "turn[] off pieces of your body that are quite important."

---

[2] Additionally, and consistent with Appellant's pleas, the military judge found Appellant guilty of one specification of violating a lawful order (a no-contact order) in violation of Article 92, UCMJ, 10 U.S.C. § 892 (2018), and one specification of wrongful use of a controlled substance (oxycodone) in violation of Article 112a, UCMJ, 10 U.S.C. § 912a (2018).

Along with other evidence, the defense offered the Food and Drug Administration (FDA) data sheet for Ambien which states that "[c]omplex sleep behaviors including . . . sleep-driving, and engaging in other activities while not fully awake, may occur following the first or any subsequent use of AMBIEN." The defense also called as a witness the nurse practitioner who had prescribed Ambien to Appellant. She testified to the following facts: (a) she prescribed Appellant Ambien on September 30, 2021; (b) she would instruct patients to take Ambien thirty minutes before bedtime and about seven to eight hours before they planned to wake up; (c) Appellant had a medical purpose and authorization to use the medication on the charged date; (d) the use of Ambien an hour or two before bedtime does not invalidate the prescription or make it "illegal"; (e) users can abuse their prescriptions for Ambien by taking Ambien "at a time when they are not trying to go to sleep, but rather trying to have some other effect"; and (f) there is a "whole list" of different effects that people might experience after taking Ambien, such as "complex sleep behaviors," but they are not common.

At the close of evidence, the defense moved for a finding of not guilty pursuant to Rule for Courts-Martial (R.C.M.) 917 (2019 ed.) on the wrongful use of Ambien specification. Defense counsel argued that the prosecution had failed to provide any evidence during its case-in-chief that Appellant had wrongfully used Ambien as he had a valid prescription for it. The military judge disagreed. He reasoned that when the evidence was viewed in the light most favorable to the prosecution, Appellant's wrongful use could be inferred from the erratic way he had been driving, the time the offense occurred (i.e., Appellant took the Ambien late in the afternoon rather than at night), his attire when he was arrested (i.e., Appellant still was partially dressed in his military uniform rather than in sleepwear), and his work schedule (i.e., Appellant was not taking the Ambien in the afternoon to accommodate "shift work").

The military judge subsequently provided the panel members with findings instructions. In doing so, he took

judicial notice that the incident occurred on a Friday. Contrary to Appellant's pleas, the panel found Appellant guilty of wrongful use of Ambien in violation of Article 112a, UCMJ. However, the panel found Appellant not guilty of the language "and aerosol inhalants" in the reckless driving specification.[3]

After the members returned their findings, the defense asked the military judge to reconsider his prior R.C.M. 917 ruling. In arguing why reconsideration was warranted, the defense asked the military judge to consider Appellant's statements during his *Care* inquiry. The military judge declined the defense's invitation and denied the request for reconsideration. The military judge emphasized that "there was evidence Ambien should be taken exactly as prescribed" right before bedtime, and that a user should not take Ambien if they cannot get a full night's sleep. The military judge concluded that "[the] manner in which [Appellant] was driving, the time of day it was, and what [Appellant] was wearing," as well as other factors, supported the inference that Appellant had not taken Ambien for its prescribed purpose.

## C. Appellant's Guilty Plea Revisited

Although the military judge denied the defense's request regarding the panel's findings, he found the "subject of the motion" raised "some concerns" about the providence of Appellant's earlier guilty plea to reckless driving. Specifically, the military judge observed that Ambien's FDA information sheet referenced "sleep driving" as a known side effect of the medication. He further noted that military law recognizes "something of a defense of

---

[3] The panel also found Appellant guilty, contrary to his pleas, of one specification of assault consummated by a battery and one specification of aggravated assault with a loaded firearm—both committed against his wife—in violation of Article 128, UCMJ, 10 U.S.C. § 928 (2018). However, the panel found Appellant not guilty of a specification of failing to obey a lawful general regulation that prohibited using an aerosol inhalant with the intent to alter mood or function, and two specifications of assault consummated by a battery.

automatism, so if someone has sort of an involuntary action, [like] a seizure or an involuntary act, then there's no reason for the law to criminalize that." Considering the foregoing, the military judge reopened the providence inquiry to explore whether Appellant had been "sleep driving" at the time of the incident and thus was not aware that he was operating a vehicle.

At the outset of the renewed providence inquiry, the military judge explained to Appellant that voluntarily taking a drug is not a defense to reckless driving. The military judge then asked Appellant, "Why do you think that your control of the vehicle was voluntary if you were under the influence of Ambien and have no memory of the driving?" Appellant replied with a variety of reasons. First, he said that even though he had no memory of driving, he obviously must have taken a number of actions to get into the car and then to drive it. ("I would have had to put some kind of shoes on, get my car keys, get in my car, start my car, turn music on . . . stop[] at stoplights . . . put my car in gear and pull[] out of the [parking] spot.") Second, Appellant told the military judge that from listening to witness testimony he understood that he was driving the car "somewhat normal at some points." Third, he said that when "[his] memory kick[ed] back in" it "didn't feel like waking up from sleep" but felt more like a blackout from drinking alcohol. ("Like a slide show and there are just some slides missing.") Fourth, Appellant agreed with the military judge that based on the complexity of his actions, he did not believe he was "asleep" while driving and that he believed that his actions were voluntary. Fifth, Appellant explained that "previously [he] was aware that Ambien was pretty potent stuff, and I know it . . . could have effects on your driving, operating machinery, whatnot."[4] Ultimately, Appellant agreed with the military judge that "the number of things [he] would have had to do and . . . their

---

[4] In response to a follow-up question from the military judge, Appellant explained that he learned this information "from [his] prescribing [nurse practitioner]."

complexity" led him to believe that he was not truly "asleep" at the time that he was driving.

Later, when asked again by the military judge why he believed he was responsible for his actions, Appellant explained that on the day of the incident his car was running low on fuel and he had been thinking about getting gas. Thus, Appellant said, although he did not remember the facts, he believed his motivation to get behind the wheel was to go to the gas station. Appellant also told the military judge that he believed he was aware of what he had been doing while driving, despite not remembering those actions, because he was aware of where he was at the stoplights, he was aware of other vehicles honking, and he was able to drive back home. Appellant stated, "I believe those are voluntary actions."

Based on Appellant's statements, the military judge affirmed his acceptance of the guilty plea to this offense. However, he once again informed Appellant that he could ask to withdraw his plea of guilty at any time before the announcement of his sentence. Appellant did not do so.

At the sentencing phase of the trial, the military judge sentenced Appellant to a bad-conduct discharge, confinement for a total of two years and two months, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings but suspended the first six months of the adjudged forfeitures, waived automatic forfeitures for six months, and directed that the total pay and allowances be paid to Appellant's spouse for six months. Subsequently, the military judge entered judgment. The United States Air Force Court of Criminal Appeals affirmed the findings and the sentence.

## II. The Legal Sufficiency of Appellant's Conviction for Wrongful Use of Ambien

### A. Standard of Review

We review issues of legal sufficiency de novo. *United States v. Harman*, 68 M.J. 325, 327 (C.A.A.F. 2010).

## B. Applicable Law

The elements for Article 112a (wrongful use of a controlled substance) are as follows:

> (a) That the accused used a controlled substance; and
>
> (b) That the use by the accused was wrongful.

*Manual for Courts-Martial, United States* pt. IV, para. 50.b.(2)(a)-(b) (2019 ed.) (*MCM*). The *MCM* defines wrongful use as "without legal justification or authorization." *Id.* para. 50.c.(5).

A conviction is legally sufficient when "considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Young*, 64 M.J. 404, 407 (C.A.A.F. 2007) (internal quotation marks omitted) (citations omitted). Under this standard, a reviewing court must draw every reasonable inference from the evidence in favor of the prosecution. *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). The standard for legal sufficiency is "a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (internal quotation marks omitted) (citation omitted). However, if there is no rational basis for the factfinder to draw an inference from the evidence in favor of the prosecution, and if this results in a failure of proof of an essential element, this Court will set aside the corresponding conviction. *See United States v. Plant*, 74 M.J. 297, 299-300 (C.A.A.F. 2015) (setting aside findings of guilt for child endangerment where proof of the appellant's drinking excessive amounts of alcohol while caring for his young child did not substantiate a reasonable probability that the child, who was placed in his crib during ordinary bedtime hours, would experience harm).

## C. Discussion

As an initial matter, we note that contrary to Appellant's argument, our legal sufficiency review of his conviction for wrongful use of Ambien is limited to the evidence that was presented to the trier of fact *during the trial*.

*United States v. Bethea*, 22 C.M.A. 223, 225, 46 C.M.R. 223, 225 (1973); *see also United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007) ("In a succession of early cases, we established that the review of *findings*—of guilt and innocence—was limited to the evidence presented at trial." (citations omitted)). Therefore, although we may consider all of the evidence that was admitted during the contested phase of this case (including those matters of which the military judge took judicial notice), in the course of deciding whether Appellant's conviction for wrongful use of Ambien is legally sufficient, we may not reach beyond that evidence and look at the admissions or statements made by Appellant during his guilty plea *Care* inquiry.

We also acknowledge at the outset that the standard of review to be applied for legal sufficiency is a decidedly favorable one for the government. As noted above, this Court is required to view not only the evidence, but also all the reasonable inferences that can be drawn from that evidence, in the light most favorable to the prosecution. *Young*, 64 M.J. at 407; *Barner*, 56 M.J. at 134. Therefore, although the Government in the instant case can point to no direct evidence that Appellant engaged in the wrongful use of Ambien, it properly urges this Court to consider what it characterizes as "four key reasonable inferences" and then to affirm Appellant's conviction for wrongful use of Ambien. We will review each of these proffered "reasonable inferences" directly below.

First, the Government argues that when we juxtapose (a) the trial evidence demonstrating that Appellant knew that Ambien should only be taken shortly before going to bed when the user can sleep solidly for seven to eight hours, with (b) the trial evidence demonstrating that Appellant took Ambien before 6:00 p.m. on the day of the incident, this Court should infer that Appellant was not using this sleep medication for its proper purpose but rather was using it "wrongfully." However, we are not convinced of the reasonableness of this inference. In essence, the Government is asking this Court to conclude that Appellant's conviction for wrongful use of Ambien is legally sufficient

because he took his prescribed medication a few hours before the Government feels he should have taken it. This is a thin reed upon which to base a "reasonable" inference.[5]

Second, the Government argues that because the "Ambien prescription label"[6] and a brown paper bag were observed in Appellant's car two months after the incident, Appellant must have used the Ambien while still in his car rather than at home where he could be prepared to go to sleep. Again, we are not convinced of the reasonableness of this inference. We first note that there is no evidence in the record that the prescription *bottle* was found in Appellant's vehicle. And second, as his counsel persuasively argues, there is no reason to conclude that Appellant was required to have the drug literature and brown paper bag with him in order for him to lawfully use the prescribed medication.[7]

Third, the Government argues that because Appellant was still partially in his duty uniform at the time of the police encounter, he must have taken the prescription before getting home and properly preparing for sleep. However, there is no evidence in the record that Appellant's blouse—which the Government concedes Appellant was not wearing—was anywhere in his vehicle at the time of

---

[5] This is particularly so in light of the fact that Appellant could have specifically chosen to take the Ambien early on a weekend with the express hope that he would be able to go to bed and have uninterrupted sleep for *more than* seven-to-eight hours.

[6] What the Government describes as the "prescription label" actually appears to be the paperwork that routinely accompanies any prescription.

[7] Further, the reasonableness of this inference is mitigated by the fact that Appellant could have merely opened and discarded the bag and the drug literature in his car while in the process of ensuring that the pharmacy had given him the correct prescription, and that he actually took the medication later in his apartment.

the police encounter, thereby undermining the Government's factual predicate.[8]

And fourth, the Government argues that because Appellant did not need to fall asleep in the late afternoon or early evening in order to get up in time to work a night shift, this shows that he must have been misusing the Ambien when he took it during that time frame. However, just as with the first "key reasonable inference," the Government's reliance on this timing is misplaced. A person who has been suffering from insomnia may certainly choose to properly take Ambien in the late afternoon or early evening on a Friday in order to get as much sleep as he or she possibly can during the weekend, completely unconnected to any need to get up to work a night shift.

In light of these points, we are compelled to conclude that what the Government cites as "four key reasonable inferences" would be better characterized as understandable—but not compelling—suspicions, speculations, and suppositions. And those types of considerations, standing alone, are not enough to sustain a conviction even though this Court remains fully committed to the "very low threshold" standard applicable during a legal sufficiency review. *King*, 78 M.J. at 221 (citation omitted).

This position is consistent with the views expressed by some federal circuit courts as laid out below.

"[W]e do not give the government the benefit of *every potential* inference but rather, only those inferences reasonably and logically flowing from the other evidence adduced at trial." *United States v. Santistevan*, 39 F.3d 250, 258 (10th Cir. 1994). An inference is unreasonable if it requires the jury "to engage in a degree of speculation and

---

[8] Further, the Government's position is counterbalanced by the reasonable inference that a person who is taking Ambien for the first time might not immediately and fully disrobe but rather would get comfortable and relax for a while in his apartment to see how quickly and effectively the medication really works before going through the whole process—in the late afternoon—of putting on some form of sleepwear.

conjecture that renders its findings a guess or mere possibility." *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995) (internal quotation marks omitted) (citation omitted). After all, "[i]nferences must stop at some point." *United States v. Crain*, 33 F.3d 480, 487 (5th Cir. 1994). To this end, at "some point along a rational continuum, inferences may become so attenuated from underlying evidence as to cast doubt on the trier of fact's ultimate conclusion." *United States v. Summers*, 414 F.3d 1287, 1295 (10th Cir. 2005); *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir. 1987).

In applying these legal principles to the facts in this case—with special emphasis on the fact that Appellant's medical provider prescribed this medication for Appellant to take—we conclude that the inferences the Government cites in support of a legal sufficiency determination are overly speculative and too attenuated from the evidence in the record. Therefore, we hold that Appellant's conviction for wrongful use of Ambien is legally insufficient.

### III. The Providence of Appellant's Guilty Plea to Reckless Driving

### A. Standard of Review

We review a military judge's decision to accept a guilty plea for abuse of discretion. *United States v. Forbes*, 78 M.J. 279, 281 (C.A.A.F. 2019) (citation omitted). In reviewing the providence of a plea, a military judge abuses his or her discretion only where there is a substantial basis in law or fact for questioning the guilty plea. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). We "giv[e] broad discretion to military judges in accepting [guilty] pleas." *United States v. Moratalla*, 82 M.J. 1, 4 (C.A.A.F. 2021) (alterations in original) (internal quotation marks omitted) (citation omitted). However, "the military judge's determinations of questions of law arising during or after the plea inquiry are reviewed de novo." *Inabinette*, 66 M.J. at 321. An appellant "bears the burden of establishing that the military judge abused his discretion, i.e., that the record shows a substantial basis in law or fact to question the

plea." *United States v. Phillips*, 74 M.J. 20, 21-22 (C.A.A.F. 2015) (citation omitted).

### B. Applicable Law

The elements for Article 113 (reckless operation of a vehicle) as relevant to this case are as follows:

> (1) That the accused was operating or in physical control of a vehicle . . . ; and
>
> (2) That while operating or in physical control of a vehicle . . . the accused—
>
> (a) did so in a wanton or reckless manner.

*MCM* pt. IV, para. 51.b.(1)-(2) (2019 ed.). With regard to this offense, the *MCM* defines "reckless" as "a culpable disregard of foreseeable consequences to others from the act or omission involved." *Id.* para. 51.c.(7).

A providence inquiry into a guilty plea must establish that the accused himself believes he is guilty and "the factual circumstances as revealed by the accused himself objectively support that plea." *United States v. Higgins*, 40 M.J. 67, 68 (C.M.A. 1994) (internal quotation marks omitted) (citation omitted). In reviewing the providence inquiry for a guilty plea, this Court considers an appellant's colloquy with the military judge, as well as any inferences that may be reasonably drawn from it. *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007). An appellant's inability to recall specific facts underlying his or her offense does not render the guilty plea improvident. *United States v. Jones*, 69 M.J. 294, 299 (C.A.A.F. 2011); *United States v. Moglia*, 3 M.J. 216, 218 (C.M.A. 1977). Although "personal awareness is not a prerequisite for a plea of guilty . . . an inquiry must be made to ascertain if an accused is convinced of his own guilt. Such a conviction . . . may be predicated on an accused's assessment of the [g]overnment's evidence against him." *Moglia*, 3 M.J. at 218.

Article 45(a), UCMJ, 10 U.S.C. § 845(a) (2018), requires a guilty plea to be rejected when inconsistent matters arise that cannot be resolved. "[I]nconsistencies and apparent defenses must be resolved by the military judge or the

guilty plea[] must be rejected." *United States v. Pinero*, 60 M.J. 31, 34 (C.A.A.F. 2004) (internal quotation marks omitted) (citation omitted). The "possible defense" standard is the threshold for a military judge to inquire into potential affirmative defenses during a plea colloquy. *United States v. Hayes*, 70 M.J. 454, 458 (C.A.A.F. 2012). This standard "is a lower threshold than a prima facie showing because it is intended as a trigger to prompt further inquiry pursuant to Article 45, UCMJ," and *Care. Id.* Moreover, the "possible defense" standard requires that "the acceptance of a guilty plea be accompanied by certain safeguards to [e]nsure the providence of the plea, including the delineation of the elements of the offense charged and admission of factual guilt on the record" are in line with Article 45. *Id.* (internal quotation marks omitted) (citation omitted).

Military law recognizes the affirmative defense of automatism, which is "[a]ction or conduct occurring without will, purpose, or reasoned intention," "behavior carried out in a state of unconsciousness or mental disassociation without full awareness," and "[t]he physical and mental state of a person, who though capable of action, is not conscious of his or her actions." *United States v. Torres*, 74 M.J. 154, 156 n.3 (C.A.A.F. 2015) (alterations in original) (internal quotation marks omitted) (citation omitted). An accused "cannot be held criminally liable in a case where the actus reus is absent because the accused did not act voluntarily, or where the mens rea is absent because the accused did not possess the necessary state of mind when he committed the involuntary act." *Id.* at 157.

In *Torres*, we observed that previously, "[n]either the UCMJ nor this Court's precedent [had] provided definitive guidance regarding whether automatism should be viewed as negating the mens rea or the actus reus of a charged offense." *Id.* Although in *Torres* we recognized that our "predecessor [court] indicated in dicta that the mens rea approach may be the most appropriate," *Torres* conclusively resolved the issue when it held, "[i]n cases where the issue of automatism has been reasonably raised by the evidence, a military judge should instruct the panel that

automatism may serve to negate the actus reus of a criminal offense." *Id.* at 157-58.

And finally, "[i]n determining the providence of [an] appellant's pleas, it is uncontroverted that an appellate court must consider the entire record in a case." *United States v. Johnson*, 42 M.J. 443, 445 (C.A.A.F. 1995) (citations omitted).

## C. Discussion

In resolving this issue, we do not discount Appellant's argument that his reckless driving was the product of automatism. As discussed above, the FDA officially acknowledges that "sleep-driving" is a potential side effect of Ambien. However, in the course of reviewing the providence of Appellant's guilty plea, we place great emphasis on the fact that when the military judge reopened the *Care* inquiry for Appellant's guilty plea to this offense, he squarely addressed the issue of automatism, and Appellant affirmatively declined to avail himself of this defense.

Specifically, the military judge informed Appellant that military law recognizes the defense of automatism. Consistent with our holding in *Torres*, the military judge also explained to Appellant that the defense of automatism pertains to the actus reus element of the offense (rather than to the mens rea element). *See* 74 M.J. at 157-58. And significantly, the military judge took a break in the proceedings to give Appellant the opportunity to discuss this issue with his defense counsel. Then, when the court-martial proceedings resumed, the military judge further explored the defense of automatism to see if Appellant wished to invoke it—and yet Appellant decided not to do so. To be sure, Appellant's responses to questions posed by the military judge were not a model of clarity, but they also were not conclusory in nature or merely clipped responses to leading questions. Rather, Appellant provided moderately well-reasoned responses to the military judge's renewed questions, and these responses drew from the observations of neutral observers, *see Moglia*, 3 M.J. at 218, his own (albeit disjointed and fragmentary) memories of the event, and his

prior knowledge that Ambien could impair one's ability to safely drive a vehicle.

And so, when it comes to the actus reus of the charged offense, Appellant stated that (a) he was convinced of his own guilt, and (b) he had reached this conclusion based—in large part—on the strength of the Government's evidence against him. In regard to this second point, this basis for pleading guilty is admittedly unusual in the military justice system. Further it has a bit of a nolo contendere[9] air to it, and military law does not permit such pleas. *See United States v. Forester*, 48 M.J. 1, 3 n.2 (C.A.A.F. 1998) ("This is contrary to what can be done in the civilian federal courts, where a defendant may plead no contest, or *nolo contendere*, to an offense."). However, our case law demonstrates that such guilty pleas where an accused primarily relies on the strength of the evidence against him rather than on his own independent recollections of his actions are permissible. In *Jones*, this Court held: "If an accused is personally convinced of his guilt based upon an assessment of the government's evidence, his inability to recall the specific facts underlying his offense without assistance does not preclude his guilty plea from being provident." 69 M.J. at 299.

Turning to the issue of the mens rea of the offense, things become less clear. However, the military judge correctly defined "recklessness" and Appellant said he understood that definition. The military judge then engaged in a colloquy with him about why he believed his conduct was "reckless." To be sure, a review of the record demonstrates that Appellant's responses were not neatly tailored to the mens rea issue. He talked more about his actions than what was going through his mind at the time of those actions. However, this Court is required to draw reasonable inferences in such instances. *See Carr*, 65 M.J. at 41. And

---

[9] "Nolo contendere" or "no contest" means "[a] criminal defendant's plea that, while not admitting guilt, the defendant will not dispute the charge." *No Contest*, Black's Law Dictionary, (12th ed. 2024).

a reasonable inference drawn from the facts elicited during the *Care* inquiry was that Appellant knew that taking Ambien would impair his ability to safely drive his car, and that he recognized, and culpably disregarded, the foreseeable consequences to others (i.e., putting them at risk of being physically harmed) when he drove his car in such a dangerous manner after taking the medication.

In light of the foregoing, we conclude that the military judge did not abuse his discretion when he accepted Appellant's guilty pleas at issue. *See Inabinette*, 66 M.J. at 322.

## IV. Decision

The decision of the United States Air Force Court of Criminal Appeals is reversed as to Specification 2 of Charge II (wrongful use of zolpidem/Ambien) and sentence. The finding of guilty with respect to this specification is set aside, and Specification 2 of Charge II is dismissed. We affirm the lower court with respect to all other findings. The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for reassessment of the sentence or for a rehearing on the sentence, if necessary.

Judge JOHNSON concurring in part and dissenting in part.

I join Part II of the Court's opinion in concluding Appellant's conviction for wrongful use of Ambien was legally insufficient. I part ways with the Court over its resolution of the providency of Appellant's guilty plea to reckless driving. Because I conclude the record does not support an inference Appellant acted with the requisite mens rea, I respectfully dissent from Part III of the Court's opinion.

The crux of my disagreement turns on the Court's treatment of Appellant's mens rea. The Court writes:

> And a reasonable inference drawn from the facts elicited during the *Care* inquiry was that Appellant knew that taking Ambien would impair his ability to safely drive his car, and that he recognized, and culpably disregarded, the foreseeable consequences to others (i.e., putting them at risk of being physically harmed) when he drove his car in such a dangerous manner after taking the medication.

*United States v. Navarro Aguirre,* __ M.J. __ (18-19) (C.A.A.F. 2025). As the majority correctly notes, consuming a lawfully prescribed medication is not a defense if the user culpably disregards the foreseeable consequences to others. But in my view, we cannot reasonably infer that Appellant culpably disregarded the risk to others by using lawfully prescribed medication, at the correct dosage, immediately prior to sleeping, as it was intended.

We review a military judge's acceptance of a plea for abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). A plea that departs from the requirements of Article 45(a), UCMJ, is harmless "if the variance does not materially prejudice the substantial rights of the accused." Article 45(c), UCMJ, 10 U.S.C. § 845(c) (2018).

In assessing whether the military judge abused his discretion in accepting a plea, "[i]t is not enough to elicit legal conclusions. The military judge must elicit facts to support the plea of guilty." *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002). "[A]n accused cannot be held criminally liable in a case where . . . mens rea is absent because

the accused did not possess the necessary state of mind." *United States v. Torres,* 74 M.J. 154, 157 (C.A.A.F. 2015). A conviction under Article 113, UCMJ, requires a mens rea of recklessness. *Manual for Courts-Martial, United States* pt. IV, para. 51.b.(2)(a). "Recklessness is not determined solely by . . . proof alone of excessive speed or erratic operation," but by considering "all the circumstances." *Id.* at para. 51.c.(7). It requires "a *culpable disregard* of foreseeable consequences to others." *Id.* (emphasis added).

Concerning Appellant's mens rea, although I agree with the Court "things become less clear," *Navarro Aguirre, __* M.J. at __ (18), in my view, the circumstances do not suggest a culpable disregard of foreseeable consequences to others. Appellant was prescribed Ambien on September 30th, the day before the events in question. There is no evidence he had ever taken Ambien before[1] or had any personal knowledge of how it would affect him. The prescribing nurse practitioner testified that people's reactions to Ambien use differ, so people "have to govern [their] response based on [their] own knowledge after taking [it] at least once or a few times to know" how it affects them. She never testified to informing Appellant of the possibility of sleep driving as a side effect. Nor is there evidence in the record to support that Appellant was aware that "complex sleep behaviors, including . . . sleep-driving," was a known side effect, or that he may be susceptible to it.

The next day, Appellant left work and arrived at his apartment around 2:30 p.m. and decided to sleep. After all, he "hadn't slept in almost two days," so, he took "the prescribed dose of one pill." Before his memory faded, he recalled lying in bed with his blouse and shoes off. "After a little while, [he] fell asleep in bed in [his] apartment."

Appellant admitted he "was aware that Ambien was pretty potent stuff, and [he knew] it [meant] sleeping could have effects on your driving, operating machinery and whatnot." However, knowing that a medication could cause

---

[1] That Appellant had not slept in two days supports the inference that he did not take any Ambien on the day he picked up his prescription.

drowsiness is different from knowing that a known side effect of the medication is that it can cause sleep driving.[2] Moreover, according to his admissions, Appellant did not take the Ambien until he got home. He did not take it while expecting to get behind the wheel. And he did not take it thinking he would go for a drive. In other words, he never describes his mental state as:

> [c]haracterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk; heedless; rash. Reckless conduct is more than mere negligence: it is a gross deviation from what a reasonable person would do.

*Reckless*, *Black's Law Dictionary* (12th ed. 2024). In criminal trials, recklessness contains both an objective and subjective component. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 n.18 (2007). The creation of a substantial and unjustifiable risk is measured against an objective standard, *id.* at 68, while the conscious disregard reflects the need for "subjective knowledge on the part of the offender." *Id.* at 68 n.18. While the Court speaks to the objective component—the nature of his driving—it does not address whether Appellant had the subjective understanding that he was culpably disregarding this risk.

Instead, the record reflects a man using his lawfully prescribed medication, at the correct dosage, immediately prior to sleeping, as it was intended. This conclusion is consistent with the Court's conclusion that the Appellant did not wrongfully use his prescription. In my opinion, neither Appellant's words nor actions demonstrate a *culpable* disregard for the foreseeable consequences.

The United States Court of Appeals for the Third Circuit came to a similar conclusion in *Government of Virgin*

---

[2] I agree with the Court's decision that Appellant's actus reus was appropriately resolved by the military judge's questions. Although Appellant's automatism defense addresses the actus reus of a crime, *Torres*, 74 M.J. at 157-58, Appellant still needed to show he had the reckless mens rea for his plea to be provident.

*Islands v. Smith,* concerning an appellant who was allegedly unconscious as the result of an epileptic seizure:

> It has been held that the operator of an automobile who is suddenly stricken by an illness which he had no reason to anticipate but which renders it impossible for him to control the car is not chargeable with negligence. On the other hand it has also been held that an operator of a motor vehicle, unconscious from illness at the time of the accident, may nonetheless be found guilty of criminal negligence in having undertaken to drive the vehicle if he knew at the time that he might black out or lose consciousness while doing so.

278 F.2d 169, 174-75 (3d Cir. 1960) (listing cases) (cited with approval in *Torres*, 74 M.J. at 157). This case resembles the former situation, rather than the latter. Nothing in the record suggests Appellant knew or disregarded the chance he would be subject to a rare side effect of Ambien.

Of course, Appellant did admit his car "was seen recklessly weaving and blocking traffic." He also agreed that he drove his vehicle voluntarily. But as the Court correctly describes, these solitary statements fail to touch on his mental state. Considering his driving "under all the circumstances" paints the picture of a man wanting to sleep, going to bed, and intending to sleep. *MCM* pt. IV, para. 51.c.(7). These statements should also be viewed in light of the military judge's instructions. Upon reopening the guilty plea, the military judge gave Appellant the voluntary intoxication instruction, saying "tak[ing] a drug voluntarily is not a defense."[3] Appellant, intending to sleep, did take Ambien voluntarily; so after being told that this could not be a

---

[3] Appellant did not raise instructional error on appeal, but his admissions raise the defense of *involuntary* intoxication. "[I]ntoxication is involuntary when an accused is unaware of the effect of a drug or substance on him." *United States v. MacDonald*, 73 M.J. 426, 437-48 (C.A.A.F. 2014). "Among the circumstances of intoxication said to be involuntary is the circumstance in which, as a result of a genuine mistake as to the nature or character of the liquor or drug, the drunkenness has resulted from taking something not known to be capable of producing such a result." *United States v. Ward*, 14 M.J. 950, 953 (A.C.M.R. 1982).

defense to his conduct, Appellant naturally agreed with the military judge.

Appellant's admissions fail to establish his actions were a result of a culpable disregard of any consequences. In light of this, his mental state does not rise to the reckless mens rea. Absent mens rea, I would hold Appellant was materially prejudiced by the military judge's acceptance of his guilty plea and his plea should be held improvident.